2750

Thomas Dimitre, OSB # 103721
dimitre@mind.net
Thomas Dimitre, Attorney at Law L.L.C.
PO Box 801
Ashland, OR 97520
Telephone: 541-890-5022
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **Cathy DeForest, Leon Pyle and Edward Kerwin** | **Case No.** 11-3159-CL |
| **Plaintiffs** | **COMPLAINT for violations of the Resource Conservation Recovery Act (42 U.S.C. 6901 et seq.),  Clean Water Act (33 U.S.C. 1365 et seq), Endangered Species Act(16 U.S.C. section 1531 et seq.) and for Public and Private Nuisance, Trespass, Negligence, Negligence Per se and Violation of ORS 468B.050** |
| **v.** | |
| **City of Ashland,( a municipal subdivision of the State of Oregon) Ashland Gun Club, Inc., (a Domestic Non Profit Corporation) and Chuck Partier, Bill Longiotti, Rick Georgeson, Lee Tuneberg, Mel Winner, Raymond Renteria and Jerry Wisdom (board members of the Ashland Gun Club Inc.), as individuals** | |
| **Defendants** | |

*Complaint - Cathy DeForest, Leon Pyle and Edward Kerwin v. City of Ashland,*     1
*Ashland Gun Club Inc., Chuck Partier, Bill Longiotti, Rick Georgeson, Lee Tunrberg,*
*Mel Winner, Raymond Renteria and Jerry Wisdom*

1   1.      This action is a citizen suit brought pursuant to Section
2   505 of the Federal Water Pollution Control Act (commonly
3   known as the Clean Water Act), 33 U.S.C. Section 1365. This
4   action is also a citizen suit brought pursuant to Section
5   7002(a)(1)(B) of the Solid Waste Disposal Act as amended by
6   the Resource Conservation and Recovery Act, 42 U.S.C Section
7   6972 (a)(1)(B). Thirdly, this action is a citizen suit brought
8   pursuant to section 11 of the Endangered Species Act, 16
9   U.S.C. 1540 (6)(g). This action also includes supplemental
10  claims for private and public nuisance, trespass, negligence and
11  a state water pollution control claim.

12  2.      The City of Ashland leases land it owns to the Ashland
13  Gun Club Inc. The land is located at 555 Emigrant Creek Road,
14  Ashland, Oregon, about two miles east of the City proper.

15
16  3.      Defendants have discharged and continue to discharge
17  pollutants from point sources to the waters of the United States
18  without a National Pollution Discharge Elimination System
19  (NPDES) permit, a violation of Section 301 (a) of the Clean
20  Water Act, 33 U.S.C. Section 1311(a). Plaintiff City has also
21  filled wetlands without the required permit, also a violation of
22  Sections 404 and 301 (a) of the Clean Water Act, 33 U.S.C.
23  Section 1311(a). Plaintiffs seek a declaratory judgment,
24  injunctive relief, the imposition of civil penalties, and award of
25  costs, including attorney and expert witness fees. Defendant's
26  unpermitted discharges are in violation of an "effluent standard
27  or limitation" under Section 505(a)(1)(A) of the Clean Water Act,
28  33 U.S.C. Section 1365(a)(1)(A).

4.      Defendants have discharged and continue to discharge pollutants into Emigrant Creek and connected wetlands that constitute a "take" of threatened Coho salmon. Defendants do not have a permit for this "take" of Coho salmon, as required by Section 10 of the Endangered Species Act, 16 U.S.C. Section 1539.  Plaintiffs seek a declaratory judgment and injunctive relief as authorized by Section 11 (g) (1) (a), 16 U.S.C. Section 1540, the imposition of civil penalties as authorized by Section 11 (a) (1), U.S.C. Section 1540 and award of costs, including attorney and expert witness fees as authorized by Section 11 (g) (4), 16 U.S.C. Section 1540.

5.      Defendants have contributed to and continue to contribute to the past and present handling and disposal of solid and/or hazardous waste which presents an imminent substantial endangerment to health and/or the environment, in violation of 42 U.S.C. Section 6972(a)(1)(B).  Plaintiff seeks a declaratory judgment, injunctive relief and the award of costs, including attorney and expert witness fees.

6.      Defendants violated the Oregon Water Pollution Control law (ORS chapter 468B.005 to 468B.035) in its operation of its shooting range, by causing pollution into waters of the State of Oregon.

7.      This Court has subject matter jurisdiction over the claims specified in this complaint, pursuant to 33 U.S.C. Section 1365(a), 42 U.S.C. Section 6972(a), and 28 U.S.C. Section 1331. This Court also has supplemental jurisdiction over Plaintiff's state law claims, nuisance, negligence and trespass

claims pursuant to 28 U.S.C. Section 1367. The relief requested is authorized pursuant to 33 U.S.C. Section 1319 and 1365(a), 42 U.S.C. Section 6972, and 28 U.S.C. Sections 2201 and 2202.

8.    On or about August 29, 2011, Plaintiffs gave notice of the Clean Water Act violations specified in this complaint and of its intent to file suit to the Administrator of the U.S. Environmental Protection Agency (EPA), to the Regional Administrator of the EPA, to the Oregon Department of Environmental Quality (DEQ), to Defendants and to Defendant's registered agent, as required by Section 505(b)(1)(A) of the Clean Water Act, 33 U.S.C. Section 1465(b)(!)(A).

9.    More than sixty days have passed since notice was served, and the Clean Water Act violations complained of in the notice are continuing at this time or reasonably likely to continue. Neither the EPA nor DEQ has commenced or is diligently prosecuting a civil or criminal action to redress the violations.

10.    Defendants remain in violation of the Clean Water Act.

11.    On or about August 29, 2011, Plaintiffs gave notice of the Solid Waste Disposal Act violations specified in this complaint and of its intent to file suit to the Administrator of the U.S. Environmental Protection Agency (EPA), to the Regional Administrator of the EPA, to the Oregon Department of Environmental Quality (DEQ), to Defendants, and to Defendant's registered agent, as required by Section 7002(b)(2)(A) of the Solid Waste Disposal Act , 42 U.S.C. Section 6972(b)(2)(A).

12.     More than ninety days have passed since notice was served and the Solid Waste disposal Act violations complained of in the notice are continuing at this time or likely to continue. Neither EPA, nor DEQ has commenced or is diligently procuring a civil or criminal action to redress the violations.

13.     Defendants remain in violation of the Solid Waste Disposal Act.

14.     On or about August 29, 2011, Plaintiffs gave notice of the Endangered Species Act violations specified in this complaint and of its intent to file suit to the Administrator of the National Oceanic and Atmospheric Administration, to the Assistant Administrator for Fisheries, NOAA Fisheries (NOAA), to Defendants, and to Defendant's registered agent, as required by Section 16 U.S.C. 1540 (a)(6)(g)(2).

15.     More than sixty days have passed since notice was served and the Endangered Species Act violations complained of in the notice are continuing at this time or likely to continue. NOAA has not commenced, nor is NOAA diligently prosecuting a civil or criminal action to redress the violations.

16.     Defendants remain in violation of the Endangered Species Act.

17.     Venue is appropriate in the Federal District Court for the District of Oregon pursuant to Section 505(c)(1) of the Clean Water Act, 33. U.S.C. Section 1365(c)(1); Section 7002(a) of the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Solid Waste Disposal Act, 42 U.S.C. Section 6973(a); Section
16 U.S.C. 1540 (a)(6)(g)(1)(C) and 28 U.S.C. Section 1391
because the source of the violations is located within the District
of Oregon.

**PLAINTIFFS**

18.     Plaintiff Edward Kerwin owns land near to land owned by
Defendant City of Ashland, on which Defendant Ashland Gun
Club Inc. operates a shooting range.

19.     Plaintiff has standing in this suit to protect his own
interests.  Plaintiff's interests are adversely affected by
Defendant's discharges to water, which degrade the receiving
waters as fish and wildlife habitat, recreational resources, and
sources of aesthetic benefits.  Plaintiff's interests are adversely
affected by Defendant's handling and disposal of lead shot and
lead bullets, which degrade Plaintiff's property and Defendant's
property as fish and wildlife habitat, recreational resources and
sources of aesthetic benefits.

20.     The interests of Plaintiff Kerwin have been adversely
impacted as described in paragraph 21 below.

21.     The recreational, health, aesthetic, environmental and
economic interests of Plaintiff Kerwin have been, are being, and
will be adversely affected by Defendant's unpermitted
discharges of lead into the ground and water and waste
handling and disposal practices. Plaintiff uses, enjoys and
recreates along Emigrant Creek and Bear Creek and their
tributaries in the immediate vicinity of and downstream from,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

defendants City of Ashland's property which is leased to the Ashland Gun Club Inc. Defendant's discharges, adversely affect Plaintiff Kerwin's interests, including but not limited to, the following:

(a)     Plaintiff Kerwin has an aesthetic interest in the natural beauty and biodiversity of the receiving waters in the vicinity of and downstream from Defendant's discharges.

(b)     Plaintiff Kerwin observes and enjoys wildlife in and around his property in the immediate vicinity of locations where Defendant has disposed of lead shot and lead bullets in the land and water;

(c)     Plaintiff Kerwin has an aesthetic interest in the natural beauty and biodiversity of his property and its surroundings.

(d)     Plaintiff Kerwin observes and enjoys wildlife in and around Emigrant Creek and its tributaries in the immediate vicinity of, on, and downstream from, Defendant's discharges.

22.     Plaintiff Cathy DeForest owns land near to land owned by Defendant City of Ashland, on which the Ashland Gun Club Inc. operates a shooting range.

23.     Plaintiff has standing in this suit to protect her own interests.  Plaintiff's interests are adversely affected by Defendant's discharges to water, which degrade the receiving waters as fish and wildlife habitat, recreational resources, and sources of aesthetic benefits.  Plaintiff's interests are adversely affected by Defendant's handling and disposal of lead shot and lead bullets.  The interests of Plaintiff DeForest have been adversely impacted as described in paragraph 24 below.

*Complaint. DeForest, Pyle and Kerwin v.*                7
*City of Ashland, Ashland Gun Club Inc. et al.*

24.    The recreational and environmental interests of Plaintiff
Deforest have been, are being, and will be adversely affected by
Defendant's unpermitted discharges of lead into the ground and
water and waste handling and disposal practices. Plaintiff uses,
enjoys and recreates along Emigrant Creek and Bear Creek and
their tributaries in the immediate vicinity of and downstream from
defendants City of Ashland's property which is leased to the
Ashland Gun Club Inc.  Defendant's discharges, adversely affect
Plaintiff DeForest's interests, including but not limited to, the
following:

(a)    Plaintiff DeForest observes and enjoys wildlife, including
birds, in and
around Emigrant Creek and its tributaries in the immediate
vicinity of, and downstream from, Defendant's discharges.

(b)    Plaintiff DeForest has an aesthetic interest in the natural
beauty and biodiversity of the receiving waters in the vicinity of
and downstream from Defendant's discharges;

(c)    Plaintiff DeForest observes and enjoys wildlife in and
around her property which is in the immediate vicinity of
locations where Defendant has disposed of lead shot and lead
bullets in the land and water;

(d)    Plaintiff DeForest has an aesthetic interest in the natural
beauty and biodiversity of her property and its surroundings.

25. Plaintiff Leon Pyle owns land near to land owned by
Defendant City of Ashland, on which the Ashland Gun Club Inc.

1

operates a shooting range.

2

3

26.     Plaintiff Pyle has standing in this suit to protect his own
interests.  Plaintiff's interests are adversely affected by
Defendant's discharges to water, which degrade the receiving
waters as fish and wildlife habitat, recreational resources, and
sources of aesthetic benefits.  Plaintiff's interests are adversely
affected by Defendant's handling and disposal of lead shot and
lead bullets.  The interests of Plaintiff Pyle have been adversely
impacted as described in paragraph 27 below.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

27.     The recreational and aesthetic interests of Plaintiff Pyle
have been, are being, and will be adversely affected by
Defendant's unpermitted discharges of lead into the ground and
water and waste handling and disposal practices. Plaintiff uses,
enjoys and recreates along Emigrant Creek and Bear Creek and
their tributaries in the immediate vicinity of and downstream
from, defendants City of Ashland's property which is leased to
the Ashland Gun Club Inc.  Defendant's discharges, adversely
affect Plaintiff Pyle's interests, including but not limited to, the
following:

20

21

22

23

(a)     Plaintiff Pyle observes and enjoys wildlife in and around
Emigrant Creek and its tributaries in the immediate vicinity of,
and downstream from, Defendant's discharges;

24

25

26

(b)     Plaintiff Pyle has an aesthetic interest in the natural
beauty and biodiversity of the receiving waters in the vicinity of
and downstream from Defendant's discharges;

27

28

(c)     Plaintiff Pyle observes and enjoys wildlife in and around

his property in the immediate vicinity of locations where Defendant has disposed of lead shot and lead bullets in the land and water;

(d)     Plaintiff Pyle has an aesthetic interest in the natural beauty and biodiversity of his property and its surroundings.

## DEFENDANTS

28.     Defendant, City of Ashland ("City") is a municipal subdivision of the State of Oregon. The City owns 65 acres of land along Emigrant Creek. It has leased 32 acres to the Ashland Gun Club Inc. for the use of a gun club.

29.     Defendant, Ashland Gun Club Inc. leases the City's land and operates a shooting range at 555 Emigrant Creek Road, approximately two miles east of the City of Ashland, Oregon.

30.     Defendants Chuck Partier, Bill Longiotti, Rick Georgeson, Lee Tuneberg, Mel Winner, Raymond Renteria and Jerry Wisdom are being sued as individuals and are board members of the Ashland Gun Club, Inc.

## FACTS

31.     The Ashland Gun Club's shooting range includes numerous rifle ranges, a shotgun range and numerous pistol ranges.

32.     Shooting of some kind has taken place at the City's property by the Ashland Gun Club, Inc. since at least 1964.

33.     Emigrant Creek flows in a westerly direction through the City's property.

34.     Shortly downstream from City's property, Emigrant Creek flows into Bear Creek, which flows into the Rogue River.

35.     The general fire of the shotgun range and rifle ranges is toward Emigrant Creek.

36.     The general fire of all of the ranges is into or toward jurisdictional wetlands that are waters of the United States and waters of the State of Oregon.

37.     The shotgun range includes a "clay pigeon" range where the general direction of fire is towards Emigrant Creek.

38.     Bullets, shot, shell casings and debris from clay targets are "pollutants" as that term is defined under the Clean Water Act.

39.     The shooting of firearms at the City's property has resulted and will continue to result in numerous and repeated discharges of pollutants (including, but not limited to, bullets, shot, shell casings and debris from clay targets) to waters of the United States, including, but not limited to discharges to Emigrant Creek and its associated wetlands.

40.     Defendants are responsible for the aforementioned discharges.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

41.    Defendants do not have a National Pollution Discharge Elimination System (NPDES) permit issued pursuant to the Clean Water Act that allows them to discharge pollutants into the waters the United States.

42.    Defendant's violations of the Clean Water Act have been numerous and repeated.

43.    Because of Defendant's history of repeated discharges in the absence of an NPDES permit, Plaintiff believes and alleges that, without the imposition of appropriate civil penalties and issuance of an injunction, defendant will continue to violate the Clean Water Act on a regular or intermittent basis to the further injury of Plaintiff and others.  Prior to the trial, Plaintiff intends to amend this complaint to include any previously undiscovered violations and/or violations occurring subsequent to the most recent information available at the time that this complaint was prepared.

44.    All of Defendant's aforementioned discharges to waters are discharges from point sources into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, 33 U.S.C. Section 1311.

45.    Emigrant Creek constitutes "waters of the United States."

46.    Lead bullets and lead shot are "solid waste" as that term is defined under the Solid Waste Disposal Act.

47.     Lead bullets and lead shot are "hazardous waste" as that term is defined under the Solid Waste Disposal Act.

48.     The shooting of firearms at the City's land by the Ashland Gun Club Inc. has resulted and will continue to result in the disposal of lead bullets, lead shot, shells and clay pigeon debris onto Plaintiff's and Defendant's property.

49.     Defendants are responsible for the aforementioned disposal of lead bullets, lead shot, shells and clay pigeon debris onto Plaintiff's and Defendant's property.

50.     Defendant's handling and disposal of lead bullets and lead shot presents an imminent and substantial endangerment to health and/or the environment.

51.     The Southern Oregon/Northern California Coasts Coho ("Coho") Evolutionary Significant Unit ("ESU") was listed as "threatened" under the Endangered Species Act ("ESA") on May 6, 1997.

52.     Critical habitat that includes Emigrant Creek was established for the Coho on May 5, 1999.

53.     The discharge of lead shot and bullets and debris from clay targets into the ground and water and the resulting contamination of the ground and water constitute a "take" of the Coho within the meaning of Section 9 of the Endangered Species Act, 16 U.S.C. 1538.

*Complaint. DeForest, Pyle and Kerwin v.*          13
*City of Ashland, Ashland Gun Club Inc. et al.*

54.     The shooting of firearms at the City's land by the Ashland Gun Club Inc. has resulted and will continue to result in the "take" of Coho in Emigrant Creek.

55.     Defendants are responsible for the aforementioned "take" of Coho salmon on Emigrant Creek.

56.     Since at least 2000, Defendants, with the aid of construction equipment, have repeatedly discharged fill material below the ordinary high water mark of Emigrant Creek and into jurisdictional wetlands which are connected to Emigrant Creek. This discharge of fill material occurred along the entire south bank of Emigrant Creek within the City's property. This fill included street sweeper debris and other fill from Defendant City and the scraping and fill of other areas by the Ashland Gun Club Inc. in order to make shooting ranges on the property.

57.     Defendants did not obtain a dredge and fill permit authorizing the filling activities described in the preceding paragraph from the United States Army Corps. of Engineers ("Corps"), nor did Defendants obtain a fill removal permit authorizing the filling activities from the Oregon Division of State Lands ("DSL") prior to engaging in these filling activities, nor has Defendant City obtained such permits from the Corps. or DSL since engaging in these filling activities.

58.     Emigrant Creek and the interconnected jurisdictional wetlands constitute "waters of the United States" as that term is interpreted under the Clean Water Act.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

59.     Emigrant Creek constitutes "waters of this state" as that term is defined by Oregon Revised Statutes, Section 196.800(14).

60.     The fill material discharged by Defendants constitutes "pollutants" as that term is interpreted under the Clean Water Act.

61.     The construction equipment used by Defendants in discharging fill material into the wetlands on the south side of Emigrant Creek constitutes "point sources" as that term is interpreted under the Clean Water Act.

62.     At least 100,000 cubic feet of fill material discharged by Defendants to the wetlands on the south side of Emigrant Creek remains there today, below where the ordinary high water mark was located prior to Defendant City's discharge of fill material beginning in 2000.

63.     Defendants are responsible for the aforementioned discharges.

64.     In light of Defendants City's discharges in the absence of a dredge and fill permit or fill-removal permit, Plaintiffs believe and allege that, without the imposition of appropriate civil penalties and issuance of an injunction, Defendant City will continue to violate the Clean Water Act to the further injury of Plaintiffs and others. Prior to trial, Plaintiffs intend to amend this complaint to include any previously undiscovered violations

and/or violations occurring subsequent to the most recent information available at the time this complaint was prepared.

65.    All of Defendants' aforementioned discharges to waters are discharges from point sources into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, 33 U.S.C. § 1311.

66.    Defendants City and Ashland Gun Club Inc. have owned and operated the shooting range in a manner that has created nuisances in the forms of noise from gunfire; pollution of water with lead, arsenic and other hazardous materials; and risk of bullet strikes beyond the boundaries of Defendant's land.

67.    Defendants City and Ashland Gun Club Inc. operated the shooting range without adequate supervision of individuals to prevent unlawful and unauthorized activity at the shooting range.

68.    Defendant's ownership and operation creates extremely loud and shocking noises from gunfire.

69.    Defendant's ownership and operation of the shooting range has regularly continuously, and repeatedly caused errant bullets and a zone of danger of bullet strikes on Plaintiff's land, placing Plaintiff at unreasonable risk of bullet strikes without warning.

70.    Defendant's shooting activities at the shooting range creates trespass by bullet strikes and trespassory noise which intrudes upon Plaintiff's land.

71.     Defendant's shooting activities at the shooting range creates trespassory contamination with hazardous substances, which intrude upon Plaintiff's land.

72.     Defendant's actions harmed Plaintiffs by causing loss of the use and enjoyment of his land, loss of exclusive possession of their land, diminution in the value of his land, mental anguish from enduring Defendant's invasions and interferences, and continuing and consequential damages.

## COUNT 1

## Discharge of Pollutants Not Authorized by a NPDES Permit

73.     Plaintiffs incorporate by reference paragraphs 1 though 72.

74.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source into navigable waters of the United States, except in compliance with various enumerated sections of the Clean Water Act. Section 301(a) prohibits, inter alia, such discharges not authorized by an NPDES permit issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

75.     Oregon Revised Statutes § 468B.050 prohibits the discharge of any pollutant unless such discharge is specifically permitted in an NPDES permit.

76.     Defendant's discharges have violated and continue to violate Section 301(a) of the Clean Water Act, 33 U.S.C. §§ 1311(a) and ORS 468B.050.

## COUNT 2

## Past and Present Handling and Disposal of Solid and Hazardous Waste Which Presents an Imminent and Substantial Endangerment to Health or the Environment

77.     Plaintiffs incorporated by reference paragraphs 1 through 76.

78.     Section 7002(a)(1)(B) of the Solid Waste Disposal Act, 42 U.S.C. § 6972(a)(1)(B), prohibits contribution to the past or present handling or disposal of any solid or hazardous waste which may present and imminent and substantial endangerment to health or the environment.

79.     Defendant's handling and disposal of lead bullets, lead shot, shells and clay pigeon debris have been in violation of, and continue to be in violation of Section 7002(a)(1)(B) of the Solid Waste Disposal Act, 42 U.S.C. § 6972(a)(1)(B).

# COUNT 3

## Contamination of land, soil and water constitutes "take" of threatened Coho Salmon

80.     Plaintiffs incorporate by reference paragraphs 1 though 79.

81.     Section 9 of the Endangered Species Act, 16 U.S.C. 1538(a)(1)(B) prohibits the "take" of threatened Coho Salmon without a permit.

82.     Defendants do not possess a permit to "take" threatened Coho Salmon.

83.     Defendants' activities at the gun club property, including the discharge of lead shot, lead bullets, shells and clay pigeon debris into the waters of Emigrant Creek constitutes a "take" of threatened Coho salmon.

84.     Defendant's discharge of lead shot, lead bullets and clay pigeon debris into the waters of Emigrant Creek have been a violation of, and continue to be in violation of section 9 (a)(1)(B) of the Endangered Species Act, 16 U.S.C. 1538 (a)(1)(B).

# COUNT 4

## Discharge of Pollutants not Authorized by

## Federal or State Fill Permit

85.    Plaintiffs incorporate by reference paragraphs 1 though 84.

86.    Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source into navigable waters of the United States, except in compliance with various enumerated sections of the Clean Water Act. Section 301(a) prohibits, inter alia, such discharges not authorized by a dredge and fill permit issued pursuant to Section 404 of the Clean Water Act, 33 U.S.C. §1344.

87.    Oregon's Removal-Fill Law (ORS §§ 196.800-196.990) prohibits the filling of any "waters of this state without a permit issued under authority of the Director of the [Oregon] Division of State Lands."  ORS § 196.810(1)(a).

88.    Defendants' discharges have violated and continue to violate Section 301(a) the Clean Water Act, 33 U.S.C. §§ 1311(a), and Oregon Revised Statutes § 196.810(1)(a).

## COUNT 5

## Private Nuisance  (Kerwin only)

89.     Plaintiffs incorporate by reference paragraphs 1 through
88.

90.     Plaintiff suffers significant harm from the invasion of his
interest in the private use and enjoyment of his land as a direct
result of the following private nuisances emanating from
Defendant's shooting range: noise, water pollution,  other
pollution, and risk of bullet strikes.

## COUNT 6

## Public Nuisance

91.     Plaintiffs incorporate by reference paragraphs 1 through
90.

92.     Defendant's conduct causes significant interferences
with the public health, safety, peace, comfort, and convenience
and is of a continuing nature that the Defendant knows, or has
reason to know, is of a type that has a significant detrimental
effect upon these public rights. This unreasonable interference
with these common rights of the general public directly results
from the public nuisances emanating from Defendant's shooting
range, including those of gunfire noise, water pollution, land
pollution and risk of bullet strikes as more fully set forth above.
Plaintiffs have suffered harms of a kind different from and in
addition to that suffered by other members of the public

exercising their common rights; their standing on private
nuisance as set forth above confers standing on public nuisance
arising out of the same activity.\

## COUNT 7

### Trespass  (Kerwin only)

93.    Plaintiffs incorporate by reference paragraphs 1 through
92.

94.    Plaintiff Kerwin suffer significant harm from the invasion
of his interest in the exclusive possession of his land as a direct
result of the following regular, continuous, and repeated
trespasses by the Defendant Ashland Gun Club, Inc. :
trespassory noise, which intrudes upon Plaintiff's land;
trespassory contamination with hazardous substances, which
intrude upon Plaintiff's land: and trespassory errant bullets,
which intrude upon Plaintiff's land.

## COUNT 8

### Negligence

95.    Plaintiffs incorporate by reference paragraphs 1 through
94.

96.    Defendants breached their duty of reasonable care to
avoid harm to others by negligently or recklessly operating its
shooting range, and by failing to adequately supervise those
using it so as to prevent unlawful and unauthorized activity.
Defendants' negligence created the nuisances and trespasses

as set forth above, and was the proximate cause of Plaintiffs' reasonably foreseeable harm.

## COUNT 9

## Negligence Per Se

97.    Plaintiffs incorporate by reference paragraphs 1 though 96.

98.    Plaintiffs are a member of the class intended to be protected by ORS chapter 468B.005 to 468B.035, the Oregon Water Pollution Control law, which sets a standard of conduct and due care applicable to Defendants. The foreseeable harm caused to Plaintiffs is of the kind that the stated Oregon law is intended to prevent. Defendant violated the stated Oregon law in its operation of its shooting range, which directly caused pollution of Emigrant Creek and associated waters.

### RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests this Court to grant the following relief:

A.    Issue a declaratory judgment that Defendants have violated and continue to be in violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311, Oregon Revised Statutes § 468B.050, Section 7002(a)(1)(B) of the Solid Waste Disposal Act, 42 U.S.C. § 6972(a)(1)(B), and section 9 (a)(1)(B) of the Endangered Species Act, 16 U.S.C. 1538 (a)(1)(B).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

B.      Enjoin Defendants from operating its shooting range in such a manner as will result in further violation of the Clean Water Act, Endangered Species Act and the Solid Waste Disposal Act and enjoin Defendant from operating its shooting range in a manner causing injury to Plaintiffs or the public as set out above. In particular, Plaintiffs seeks an order enjoining Defendants from filling wetlands, from discharging pollutants to waters of the United States and State of Oreegon at its shooting range without an NPDES permit, requiring remediation of lead bullets and lead shot so that they no longer pose a threat to health or the environment and to prohibit the placement of lead bullets, lead shot and clay pigeon debris into Emigrant Creek and its tributaries;

C.      Issue an injunction requiring Defendants to complete a full soil, surface water sediment, and groundwater contamination assessment of its shooting range and adjacent property to determine the nature and extent of the pollutants that are discharged to surface waters and soil;

D.      Authorize Plaintiff, for the period beginning on the date of the Court's Order and running for one year after Defendants achieve compliance with the Clean Water Act, Endangered Species Act and the Solid Waste Disposal Act, to sample or to arrange sampling of surface waters, sediments, and soils at, and in the vicinity of, Defendants' shooting range, with the costs of the sampling to be borne by Defendants;

E.      Order Defendants to provide Plaintiffs, for a period beginning on the date of the Court's Order and running for one year after Defendant achieves compliance with the Clean Water Act, Endangered Species Act and Solid Waste Disposal Act, with a copy of all reports and other documents which Defendant

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

submits to EPA, or DEQ regarding Defendants' discharges, NPDES permit, or regarding lead bullet and lead shot wastes at the time they are submitted to these authorities;

F.    Issue a remedial injunction ordering Defendants to pay the cost of any environmental restoration or remediation deemed necessary and proper by the Court to ameliorate the surface water, sediment, soil, and environmental degradation caused by Defendant's violations;

G.    Order Defendants to pay civil penalties of \$25,000.00 per day of violation for each Clean Water Act violation occurring prior to January 1, 1997, and civil penalties of \$27,500 per day of violation for each Clean Water Act violation occurring thereafter, and civil penalties of \$32,500 per day XXX pursuant to Sections 309(d) and 505(a) of the Clean Water Act, 33 U.S.C. §§ 1319(c) and 1365(a);

H.    Award Plaintiff its costs, including reasonable attorney And expert witness fees, as authorized by Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d),SECTION XXX OF THE ENDANGERED SPECIES ACT and Section 7002(e) of the Solid Waste Disposal Act, 42 U.S.C. § 6972(e);

I.    Order Defendant to abate the nuisances alleged herein.

J.    Award compensatory damages to Plaintiff for loss in the value of his land and for loss of value for the diminished use and enjoyment of his land;

K.    Award Plaintiff non-economic damages for mental anguish suffered;

L.    Award Plaintiff consequential damages;

M.    Award Plaintiff costs and disbursements; and

N.    Award such other relief as this Court deems appropriate.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated this 23rd day of December, 2011.

Respectfully submitted,

Thomas Dimitre

Attorney at Law L.L.C.